**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| PITCHFORK FESTIVALS LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL REED AND AT PLUTO LTD.,<br><br>Defendants. | **Case No.**<br><br>**Jury Trial Demanded** |

**COMPLAINT**

Plaintiff Pitchfork Festivals LLC ("Pitchfork" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendants Michael Reed ("Reed") and At Pluto Ltd. ("At Pluto," and together with Reed, "Defendants"), alleges on personal knowledge as to facts regarding itself and on information and belief as to all others, as follows:

## I. PRELIMINARY STATEMENT

1. This action arises from a deliberate scheme orchestrated by Defendant Michael Reed to misappropriate Plaintiff Pitchfork's funds and place them beyond Pitchfork's reach by funneling them through corporate entities Reed alone owns and controls. Reed is the sole controlling principal of Big Stik, LLC ("Big Stik"), the event production company that contracted with Pitchfork to produce the Pitchfork Music Festival in Chicago. Reed is also the sole member of Defendant At Pluto Ltd., which is the sole member of Big Stik. Reed treats both entities as extensions of himself, moves funds between them at will, and used that control to convert Pitchfork's custodied festival funds for his own benefit.

2. Following the 2024 Pitchfork Music Festival and the decision not to host a 2025 Festival, during which no scope of work was executed and no services were authorized, Big Stik refused to return the remaining funds in Pitchfork's Event Account, totaling no less than $564,680. When Pitchfork approached Big Stik to return the missing funds, Big Stik refused and responded by transmitting a fabricated "Wind Down Settlement Report" to Pitchfork's Finance Director with knowing material misrepresentations of fact, calibrated to consume the precise amount that Pitchfork was seeking to recover.

3. Reed did not stop at misrepresentation. Without notice to or authorization from Pitchfork, Reed silently transferred the disputed funds out of Big Stik's Event Account into the operating account of At Pluto—a separate entity that Reed alone owns and controls—leaving Big Stik effectively insolvent. Reed orchestrated both sides of the transfer in his capacity as the sole controlling principal of both the transferor and the transferee. He concealed the transfer from Pitchfork, which learned of it only through discovery in a related arbitration proceeding.

4. Reed's misuse of the corporate form, his fabrication of supporting documentation, his fraudulent misrepresentations, and his fraudulent transfer of the disputed funds to At Pluto constitute independent tortious conduct that subjects Reed and At Pluto to direct personal liability, separate and apart from any contractual claims against Big Stik. Pitchfork brings this action to recover the misappropriated funds, to set aside the fraudulent transfer to At Pluto, to obtain a declaration that Reed is personally liable as the alter ego of Big Stik (and of At Pluto), and to recover compensatory and punitive damages for Defendants' willful and intentional misconduct.

5. Pitchfork's contractual claims against Big Stik are the subject of a pending arbitration before the American Arbitration Association, Case No. 01-25-0003-3257 (the "Arbitration"), brought pursuant to the arbitration clause contained in the Master Services

Agreement between Pitchfork and Big Stik. Neither Reed nor At Pluto is a signatory to that agreement or otherwise bound by its arbitration clause. Reed and At Pluto have expressly refused to consent to arbitration in the AAA proceeding. As such, Pitchfork brings these claims here.

## II. PARTIES

6. Plaintiff Pitchfork Festivals LLC is a limited liability company under the ownership and organization of Condé Nast, a global media company headquartered in New York, New York. Pitchfork was acquired by Condé Nast in 2015 and maintains its principal offices in New York, New York. Pitchfork founded and co-produced the Pitchfork Music Festival, an annual music festival held in Chicago, Illinois, from 2006 through 2024.

7. Defendant Michael Reed is an individual residing in Chicago, Illinois. Reed is the sole controlling principal of Big Stik, LLC, and the sole member of Defendant At Pluto Ltd. Reed served as Big Stik's sole representative throughout the parties' contractual relationship and personally orchestrated the conduct described herein, including the transmission of fraudulent misrepresentations to Pitchfork's finance personnel and the unauthorized transfer of Pitchfork's funds from Big Stik to At Pluto.

8. Defendant At Pluto Ltd. is an Illinois limited liability entity with its principal place of business in Chicago, Illinois. At Pluto is the sole member of Big Stik. Reed is At Pluto's sole member. At Pluto received the disputed funds from Big Stik in a transfer orchestrated by Reed and presently holds those funds.

9. Non-party Big Stik, LLC is an Illinois limited liability company with its principal place of business in Chicago, Illinois. Big Stik is the counterparty to Pitchfork on the Master Services Agreement at issue and is presently a respondent in the pending Arbitration. Big Stik is not a defendant in this action.

3

### III.   JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The matter in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Pitchfork is a citizen of New York. Defendant Reed is a citizen of Illinois. Defendant At Pluto Ltd. is an Illinois limited liability company whose sole member, Reed, is a citizen of Illinois. Complete diversity exists among the parties.

11.   This Court has personal jurisdiction over Defendants because both are domiciled in Illinois and subject to general personal jurisdiction in this District.

12.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because both Defendants reside in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, including Reed's transfer of the disputed funds from Big Stik to At Pluto, the operation of the Event Account, and the principal places of business of both Defendants and non-party Big Stik.

### IV.   FACTUAL BACKGROUND

**A.   Pitchfork Founds the Pitchfork Music Festival.**

13.   Pitchfork is an online music publication branded as "The Most Trusted Voice in Music" and is one of the most influential music outlets in recent decades. In 2006, Pitchfork launched the Pitchfork Music Festival, an annual music festival in Chicago's Union Park.

14.   Over the years, the Pitchfork Music Festival grew into one of the most prominent independent music festivals in the United States, expanding from two days to three and drawing world-famous performers and tens of thousands of attendees annually.

**B.** **Pitchfork Enters Into the Master Services Agreement With Big Stik, Acting Through Reed.**

15.     On July 12, 2019, Pitchfork and Big Stik entered into the Event Production Master Services Agreement (the "MSA") to provide production services for the Pitchfork Music Festival. Reed personally executed the MSA as Big Stik's representative, signing on behalf of Big Stik's managing member, At Pluto.

16.     Pursuant to the MSA, all services to be performed by Big Stik were to be defined in successive Scopes of Work ("SOWs") executed by both parties. MSA Section 2(a). The MSA expressly provided that "nothing herein shall obligate either Party to perform or accept any Services unless and until the Parties have mutually executed the attached Scope of Work." MSA Section 2(b). All Event Budgets were subject to change only by mutual agreement of the parties. MSA Section 3(e).

17.     Exhibit A to the MSA established a custodial relationship between Pitchfork and Big Stik with respect to the use of the Event's operating bank account and funds. The MSA provided that Big Stik "shall be responsible for opening and maintaining the Event bank account and shall have custodial control of the funds for the Event" (the "Event Account"). MSA Exhibit A Section 4(a). Throughout the parties' relationship, Big Stik—acting at all times through Reed—held funds advanced by Pitchfork as a custodian and fiduciary, to be applied solely to approved festival expenses.

18.     The parties subsequently executed a series of amendments: the First Amendment (February 15, 2020), the Second Amendment (interim COVID-19 terms), the Third Amendment (December 7, 2023, covering the 2024 Festival), and the Fourth Amendment (July 18, 2024, finalizing the 2024 Event Budget). The Third Amendment expressly provided that Pitchfork was

5

not obligated to reimburse Big Stik for any additional fees absent Pitchfork's prior written approval and supporting third-party vendor invoices, and required Big Stik to provide monthly AR/AP statements and a final closing statement by August 30, 2024. Third Amendment Exhibit A, Section (d); Schedule B, Section 4(d).

19. The Third Amendment further provided that, following the 2024 Festival, "any remaining Event Budget, as well as all additional amounts accrued in the [Event Account] (including any interest earned) will be paid to Pitchfork" no later than thirty days after the final monthly AR/AP statement.

**C.** **Reed Exercises Sole Control Over Big Stik and At Pluto.**

20. At all relevant times, Reed has been the sole controlling principal of Big Stik and the sole member of At Pluto. At Pluto, in turn, is the sole member of Big Stik. The two entities share a common principal address in Chicago, Illinois. Reed alone makes all material decisions for both entities, signs all material agreements, and exercises sole signing authority over their bank accounts. No other person serves as a manager, officer, director, or member of either Big Stik or At Pluto.

21. Reed has consistently disregarded the corporate separateness of Big Stik and At Pluto, treating them as a single enterprise under his exclusive control. The funds at issue here were moved between the entities at Reed's direction, without arm's-length consideration, without contemporaneous notation in any corporate record disclosed to date, and without notice to or authorization from Pitchfork. Big Stik and At Pluto observe corporate formalities only nominally, are inadequately capitalized for the obligations they undertake, and serve as mere instrumentalities of Reed personally.

6

**D.** **The 2024 Festival Concludes and the 2025 Festival Is Cancelled With No Authorized Services.**

22.     The 2024 Pitchfork Music Festival took place over July 19–21, 2024. On July 12, 2024, Pitchfork advanced $3,970,180 to Big Stik for the 2024 Festival.

23.     On August 28, 2024—within thirty working days of the 2024 Festival's conclusion—Pitchfork's Head of Procurement, Alys Wood-Bibby, sent Reed an email stating: "Per our 2024 SOW, we're writing to let you know that as of now, Condé Nast is planning for a Pitchfork Festival to go ahead in 2025. Please note, this information is subject to the confidentiality obligations under our services agreement." That notification was a deliberately limited contractual notice of planning status—listed under "Pitchfork's Responsibilities" in the Third Amendment and expressly non-binding—and was not an authorization to proceed with any 2025 operations.

24.     Reed responded to the August 28 notification with a simple "Thank you for letting me know!" He did not seek further authorization, did not propose a 2025 SOW, and did not submit any budget or expense requests in connection with any 2025 planning activities. Following the August 28 notification, the parties did not agree to any MSA amendment, SOW, or other terms in connection with the 2025 Festival.

25.     Reed's own contemporaneous correspondence confirms his understanding that no 2025 commitment had been made. On September 25, 2024, Reed wrote, "I don't know what the state of things is, but there is a lot of pressure to get moving from agents . . ." On October 15, 2024, Reed wrote: "I assume there's still no movement . . ." Pitchfork confirmed that there was "still no movement" regarding the 2025 Festival.

26.     On November 11, 2024, Pitchfork informed Big Stik in writing that the 2025 Pitchfork Music Festival would not take place. Reed was personally notified by a call from

7

Pitchfork's festival team and responded to the public announcement statement with "Looks good. Thank you"—without raising any claim, objection, or notice of any "wind-down" costs.

**E.     Reed Fabricates the Wind Down Settlement Report and Transmits It to Pitchfork's Finance Team With Knowing Misrepresentations.**

27.     Pursuant to the Third Amendment, all remaining funds in the Event Account were due to Pitchfork following the 2024 Festival. Big Stik did not return the funds, did not provide the required monthly AR/AP statements, and did not provide a final closing statement by August 30, 2024.

28.     In or around January 2025, Pitchfork's finance team conducted routine year-end reconciliation of the 2024 festival accounts. Condé Nast's Finance Director identified that approximately $564,680 of Pitchfork's $3,970,180 advance was unaccounted for. At no point prior to this reconciliation did Reed or Big Stik disclose intent to retain those funds, seek approval to do so, or provide notice of any "wind-down" claim.

29.     On January 8, 2025, Condé Nast's Finance Director contacted Reed seeking clarification of the discrepancy and requesting the return of the outstanding $564,680.

30.     On January 9, 2025, rather than returning the funds, Reed transmitted to Condé Nast's Finance Director a document titled "Pitchfork Music Festival 2025 Cancellation and Wind Down Settlement Report" (the "Wind Down Settlement Report"), dated January 8, 2025. In transmitting the Wind Down Settlement Report, Reed made the following specific false representations of existing fact:

   a.   That "the remaining monies are incurred and attributed to the canceled 2025 event and the wind-down of all operations." In fact, as established by Big Stik's own subsequently produced backup documentation and Reed's deposition admissions,

8

a large portion of the costs claimed in the Wind Down Settlement Report had not yet been incurred as of January 9, 2025.

b. That "in August of 2024, Condé Nast notified us to proceed with the 2025 festival, which started all advanced operations for the event." In fact, the August 28 notification was a deliberately limited contractual notice of planning status, not an authorization to proceed with operations or incur expenses.

c. That the funds covered "pending and potential costs from the previous years of 2006–2024 (e.g., routine amusement tax audits, retroactive city and state fees, legal disputes attributed to the event, tax amendments etc.)." Reed's own subsequently produced backup documentation contains no entries, invoices, or supporting documentation for any costs predating 2024.

31. The Wind Down Settlement Report itself contained false statements of material fact. It purported to itemize actual expenses—$190,000 for Labor; $150,000 for a Production Fee; $150,000 for a Cancellation Fee; $30,000 for Storage; $15,000 for Legal; $10,000 for Accounting; and $20,000 for Taxes, totaling $565,680. The figures were not based on actual costs incurred. They were reverse engineered to consume the precise balance remaining in the Event Account. When questioned at his April 28, 2026 deposition about whether Condé Nast's Finance Director's January 8 figure influenced the numbers in the Wind Down Settlement Report, Reed conceded that "it may have."

32. Reed made these representations knowing they were false. He made them with the intent that Pitchfork rely on them and accept that the $564,680 was legitimately retained by Big Stik (and, ultimately, by Reed personally through At Pluto), rather than demand its return.

**F.      Reed Produces Fabricated Litigation-Created Backup Documentation.**

33. Following the commencement of the Arbitration, Big Stik—again acting through Reed—produced a spreadsheet purporting to serve as backup documentation for the Wind Down Settlement Report. Reed admitted at his deposition that the backup spreadsheet was "not [created] in the ordinary course of business," and that it was created "specifically to support [his] position in this arbitration."

34. The figures in the backup documentation differ from those in the Wind Down Settlement Report. More tellingly, the backup documentation contains entries that postdate the Wind Down Settlement Report itself—including storage rental payments and legal fees—which demonstrate that the Wind Down Settlement Report could not have been based on actual costs at the time it was issued.

35. The backup documentation also charges Pitchfork's custodied funds with Big Stik's own litigation defense costs against Pitchfork, including fees billed by Duggan Bertsch for the matter described as "Big Stik Dispute with Conde Nast" beginning in November 2024 and the AAA filing fee for the Arbitration itself, dated February 18, 2026.

**G.    Reed Causes the Disputed Funds to Be Transferred From Big Stik to At Pluto, Rendering Big Stik Insolvent.**

36. At his April 28, 2026 deposition, Reed admitted that he transferred the disputed funds out of the Event Account into the operating account of At Pluto, and that he did not notify anyone at Pitchfork or Condé Nast before doing so. Reed further testified that, as of his deposition, Big Stik has no funds in its account. Reed orchestrated the transfer in his capacity as the sole controlling principal of both the transferor (Big Stik) and the transferee (At Pluto).

37. The transfer was not disclosed to Pitchfork in any contemporaneous communication and came to light only through written discovery in the Arbitration. The transfer

was made with actual intent to hinder, delay, or defraud Pitchfork, as evidenced by, among other badges of fraud:

    a. Reed transferred the funds to an insider entity owned and controlled exclusively by him (At Pluto);

    b. Reed retained possession and control of the funds after the transfer through his ownership of At Pluto;

    c. Reed concealed the transfer from Pitchfork and did not disclose in contemporaneous correspondence, internal accounting communications, or financial statements provided to Pitchfork;

    d. The transfer was of substantially all of Big Stik's remaining assets attributable to Pitchfork's account;

    e. Big Stik was rendered insolvent or effectively empty by the transfer; and

    f. The transfer occurred without notice to or authorization from Pitchfork, the rightful owner of the funds, and at a time when Pitchfork had demanded their return and a dispute over those funds had crystallized.

38. At Pluto did not provide any value, reasonably equivalent or otherwise, in exchange for the transferred funds. The transfer was gratuitous and made for the benefit of Reed personally, who owns 100% of At Pluto and exercises sole control over its operating account.

**H.** **Pitchfork Demands Return of Its Funds; Defendants Refuse.**

39. On February 19, 2025, Pitchfork sent Big Stik a letter via counsel demanding the return of the improperly withheld $564,680. On February 26, 2025, Big Stik refused the demand, with Reed reiterating and expanding upon the false representations made in his January 9 email.

40.     Neither Reed nor At Pluto has returned, accounted for, or otherwise made Pitchfork whole for the funds presently in At Pluto's possession. Defendants have provided no documentation reflecting any consideration given by At Pluto in exchange for the transfer, and no documentation explaining or justifying At Pluto's continued retention of funds that, on Defendants' own theory, originated with Pitchfork.

## V.     CAUSES OF ACTION

### COUNT ONE – FRAUD / FRAUDULENT MISREPRESENTATION
#### (Against Defendant Reed)

41.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

42.     On January 9, 2025, Reed, individually and acting on behalf of Big Stik, made false statements of material fact to Condé Nast's Finance Director, who was conducting routine year-end reconciliation and seeking return of the $564,680. Specifically, Reed falsely represented that: (i) the funds had already been incurred and attributed to 2025 wind-down costs, when in fact the great majority of the claimed costs had not yet been incurred; (ii) Condé Nast had authorized Big Stik to proceed with the 2025 Festival in August 2024, when in fact the August 28 notification was a deliberately limited contractual notice of planning status that did not authorize any such thing; and (iii) the funds covered pending and potential costs from 2006 through 2024, for which there was no contractual basis.

43.     Reed transmitted these false representations to Condé Nast's Finance Director along with the Wind Down Settlement Report, which itself contained false statements of material fact in the form of fabricated expense figures.

44.     Reed knew these representations were false when he made them. He knew the August 28 notification was a limited contractual notice and not an authorization to proceed. He knew the Wind Down Settlement Report figures were not based on actual costs incurred.

45. Reed made these false representations with the intent to induce Pitchfork to accept that the $564,680 was legitimately retained by Big Stik (and ultimately by Reed) rather than demand its return, as evidenced by the context of Condé Nast's Finance Director's inquiry and Reed's use of the Wind Down Settlement Report as a justification to refuse to return the funds.

46. Pitchfork reasonably relied on Reed's representations to its detriment. Upon receiving the Wind Down Settlement Report on January 9, 2025, Pitchfork suspended its demand for immediate return of the $564,680 and its finance and legal personnel had to investigate the claimed expenses before pursuing further recovery action — a delay Reed's fraudulent misrepresentations were designed to induce and that directly caused Pitchfork to incur additional harms, including but not limited to additional expenditure of resources, attorneys' fees and costs.

47. Reed is personally liable on this claim because he authored and transmitted the fraudulent representations and the Wind Down Settlement Report. Under Illinois law, a corporate officer or member who personally participates in or authorizes tortious conduct, including fraud, is personally liable for that conduct regardless of corporate status.

48. As a direct and proximate result of Reed's fraud, Pitchfork has suffered damages in an amount to be determined at trial, including but not limited to the withheld funds of $564,680, attorneys' fees and costs incurred in recovering those funds, pre- and post-judgment interest, and punitive damages.

49. The contractual damages limitation in MSA Section 25 is unenforceable as applied to Reed's fraudulent conduct. Under Illinois law, a party cannot contractually immunize itself from liability for its own intentional fraudulent misconduct, and contractual limitations on punitive damages do not apply where the conduct at issue constitutes intentional fraud. In any event, the damages limitation does not apply to Reed individually, as he is not a party to the MSA. The fraud

13

claim asserted in this Count arises from Reed's independent tortious conduct in his individual capacity and is entirely separate from Pitchfork's contractual claims against Big Stik pending in the Arbitration. The economic loss rule does not bar this claim because Reed's fraudulent misrepresentations were not a mere breach of contract but deliberate independent tortious conduct by a non-party to the MSA causing damages beyond and apart from any contractual loss.

## COUNT TWO – UNJUST ENRICHMENT
### (Against Defendants Reed and At Pluto)

50.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

51.     Defendants retained a benefit by keeping, without legal or equitable basis, an amount to be determined at trial, but no less than $564,680. The funds originally retained by Big Stik were transferred to At Pluto, and Reed personally controls and benefits from the retention through his sole ownership of both entities.

52.     Pitchfork suffered a detriment as a result of Defendants' unlawful misappropriation of the funds.

53.     The retention of the benefit by Defendants violates principles of justice, equity, and good conscience.

54.     This claim is asserted against Reed and At Pluto in their individual capacities. Neither Reed nor At Pluto is a party to the MSA, and no contract governs their receipt and retention of the disputed funds. The unjust enrichment claim is therefore not barred by the existence of the MSA, which runs only between Pitchfork and Big Stik.

## COUNT THREE – BREACH OF FIDUCIARY DUTY
### (Against Defendant Reed)

55.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

14

56.     Under Illinois law, a controlling principal who personally exercises custodial control over another party's funds owes a personal fiduciary duty to the beneficiary of that custody, independent of any corporate structure. Reed exercised sole personal signing authority over the Event Account, personally directed all disbursements, and personally made all decisions regarding the use and retention of Pitchfork's custodied funds. Reed's fiduciary duty to Pitchfork arose from his personal exercise of that custodial control, not merely from his role as Big Stik's principal.

57.     Under the MSA and amendments, Big Stik was entrusted with custodial control of the Event Account and its funds. This custodial arrangement created a fiduciary duty requiring Big Stik to act with the utmost good faith, loyalty, and accountability in managing the Event Account on Pitchfork's behalf. Reed, as the sole controlling principal who personally exercised control over the Event Account on Big Stik's behalf, owed a corresponding fiduciary duty.

58.     Reed breached that fiduciary duty by: (i) misappropriating the funds remaining in the account for unauthorized purposes; (ii) silently retaining funds that were contractually required to be returned; (iii) attempting to disguise the misappropriation through a sham Wind Down Settlement Report containing fabricated figures; (iv) transmitting false representations to Pitchfork's finance personnel to prevent recovery; (v) producing litigation-created backup documentation in lieu of contemporaneous records; (vi) charging Pitchfork's custodied funds with Big Stik's own litigation defense costs; and (vii) transferring the disputed funds to At Pluto without notice to or authorization from Pitchfork.

59.     Reed's conduct was willful, in bad faith, and in derogation of the trust reposed in him by Pitchfork.

60. Pitchfork suffered harm as a result of Reed's breach of fiduciary duty in an amount to be determined at trial, but no less than $564,680, together with consequential damages, attorneys' fees, pre- and post-judgment interest, and punitive damages.

## COUNT FOUR – CONVERSION
### (Against Defendants Reed and At Pluto)

61. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

62. Pitchfork has a possessory interest in the remaining funds in the Event Account following the 2024 Festival, no less than $564,680. These funds are specifically identifiable as the $564,680 custodied in the Event Account under the MSA and subsequently transferred by Reed to At Pluto's operating account, as Reed admitted at his April 28, 2026 deposition.

63. Defendants exercised unlawful dominion and control over these funds by refusing to return them to Pitchfork, by issuing the fraudulent Wind Down Settlement Report to justify their retention, by transferring the funds from Big Stik to At Pluto without notice to Pitchfork, and, upon information and belief, by drawing down those funds to pay unauthorized expenses, including Big Stik's own litigation defense costs.

64. Pitchfork demanded the return of the funds. Defendants refused.

65. Defendants have no legal right to retain the funds.

66. As a direct and proximate result of Defendants' conduct, Pitchfork has suffered damages in an amount to be determined at trial, but no less than $564,680, together with punitive damages.

## COUNT FIVE – ACCOUNTING
### (Against Defendants Reed and At Pluto)

67. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

68. Big Stik was designated custodian of the Event Account and its funds and was required to provide monthly AR/AP statements and a final closing statement. Reed, as the sole controlling principal who personally exercised custody and control over the Event Account through Big Stik, failed to provide the required monthly AR/AP statements and final closing statement and is personally liable for that failure. At Pluto, as the transferee of the disputed funds and the entity through which Reed exercises continuing control over those funds, is subject to an accounting of all funds received from the Event Account and their subsequent disposition.

69. Reed, through his sole control of Big Stik and At Pluto, maintained custody of Pitchfork's funds since at least 2019. Throughout that period, and in particular following the 2024 Festival, Big Stik failed to provide adequate statements of income, expenses, and accrued interest, including the monthly AR/AP statements and final closing statement required by the Third Amendment.

70. Upon information and belief, Reed caused Big Stik to draw down the Event Account funds to pay unauthorized expenses, including its own litigation defense costs, and to transfer the remaining funds to At Pluto, all without Pitchfork's knowledge or authorization. The full current balance of any accounts holding the transferred funds, the disposition of all transferred funds, and all transactions therein since July 2024 are unknown to Pitchfork without a court-ordered accounting. Reed further admitted at his April 28, 2026, deposition that the transferred funds are now held in the At Pluto operating account commingled with other funds, including proceeds from Reed's personal performance activities, rendering tracing of Pitchfork's funds impossible without a court-ordered accounting.

71. Defendants exercised unlawful dominion and control over these funds and have refused to return them or provide adequate accounting to Pitchfork despite demand.

17

72.     Pitchfork is therefore entitled to a decree compelling a full accounting from Defendants of the Event Account from July 2024 to the present, and of all funds transferred from the Event Account to At Pluto or any other person or entity, including complete accounting schedules of all income, expenses, disbursements, and accrued interest, with supporting documentation for every transaction.

## COUNT SIX – FRAUDULENT TRANSFER UNDER 740 ILCS 160/1 *et seq.*
### (Against Defendants Reed and At Pluto)

73.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

74.     Pitchfork is a creditor of Big Stik within the meaning of 740 ILCS 160/2 by virtue of its claim for return of the $564,680 in custodied funds. Pitchfork's claim arose no later than August 30, 2024, the contractual deadline by which the remaining Event Account funds were required to be returned under the Third Amendment.

75.     Without notice to or authorization from Pitchfork, Reed caused Big Stik to transfer substantially all of the disputed funds to At Pluto. The transfer is voidable under 740 ILCS 160/5(a)(1) because it was made with actual intent to hinder, delay, or defraud Pitchfork as a creditor, and is also voidable under 740 ILCS 160/5(a)(2) and 740 ILCS 160/6 as a constructively fraudulent transfer made without receiving reasonably equivalent value while Big Stik was insolvent or became insolvent as a result. The transfer to At Pluto occurred after Pitchfork's claim had crystallized and after Reed had received Pitchfork's January 8, 2025, request for return of the funds.

76.     Big Stik's own interrogatory responses state that the year-end balance as of December 31, 2024, was approximately $516,000, which Big Stik's CPA directed be recorded as a liability. The difference between the $564,680 balance identified by Pitchfork in January 2025 and the $516,000 year-end figure reflects unauthorized post-Festival disbursements from the Event

18

Account, including Big Stik's own litigation defense costs charged against Pitchfork's custodied funds without Pitchfork's knowledge or authorization. The full amount subject to Pitchfork's claim is no less than $564,680.

77. The badges of fraud set forth in 740 ILCS 160/5(b) are present:

    a. <u>Transfer to an insider (740 ILCS 160/5(b)(1)):</u> Reed caused Big Stik to transfer the funds to At Pluto, which he himself controls as sole member, making the transfer effectively a transfer to himself.

    b. <u>Debtor retained possession or control of the property after the transfer (740 ILCS 160/5(b)(2)):</u> Reed controls At Pluto and therefore retained effective control over the transferred funds.

    c. <u>Transfer was concealed (740 ILCS 160/5(b)(3)):</u> The transfer was not disclosed to Pitchfork before, when, or after it occurred. Pitchfork learned of the transfer only through written discovery.

    d. <u>Transfer was of substantially all of the debtor's assets (740 ILCS 160/5(b)(5)):</u> Reed moved essentially all of the remaining Event Account funds, which constituted substantially all of Big Stik's assets associated with the Pitchfork engagement.

    e. <u>Debtor was insolvent or became insolvent shortly after the transfer was made (740 ILCS 160/5(b)(9)):</u> Reed admitted at his deposition that Big Stik has no funds in its account; Big Stik is now effectively empty.

78. Pitchfork is entitled to the remedies provided under 740 ILCS 160/8, including avoidance of the transfer to At Pluto to the extent necessary to satisfy Pitchfork's claim and any

other relief the circumstances require, including a money judgment against Defendants under 740 ILCS 160/9 in the amount of the value of the asset transferred.

**COUNT SEVEN – ALTER EGO / CORPORATE VEIL PIERCING**
**(Against Defendant Reed)**

79.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

80.     Under Illinois law, a court will pierce the corporate veil and disregard the corporate fiction where (i) there is such a unity of interest and ownership that the separate personalities of the entity and the individual no longer exist, and (ii) circumstances are such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

81.     As pleaded above, Big Stik and At Pluto have such a unity of interest and ownership with Reed that the separate personalities no longer exist. Reed is the sole member of At Pluto; At Pluto is the sole member of Big Stik. Big Stik has no employees and exists for the sole purpose of performing Pitchfork festival work. At Pluto has no assets other than its membership interest in Big Stik and occasional other funds that are *de minimus* amounts derived from Reed's personal performance activities. The two entities share the same principal address. Reed makes all decisions, controls all finances, and freely commingles the operations and funds of both entities, including by transferring Event Account funds from Big Stik to At Pluto at will.

82.     Adherence to the corporate fiction would sanction fraud and promote injustice. Reed personally orchestrated the fraudulent Wind Down Settlement Report scheme through Big Stik, then personally caused the disputed funds to be transferred from Big Stik to At Pluto without notice to or authorization from Pitchfork, rendering Big Stik effectively empty. To recognize Big Stik as a separate legal person under these facts would permit Reed to retain Pitchfork's money personally while hiding behind an empty shell.

20

83. Accordingly, Reed is personally liable for all claims asserted against Big Stik in this action and in any related proceeding, including without limitation the claims for breach of fiduciary duty, conversion, unjust enrichment, accounting, and fraudulent transfer. To the extent any judgment or award is entered against Big Stik in the related arbitration proceeding, for breach of contract, breach of the implied covenant of good faith and fair dealing, or any other claim, Reed, as the alter ego of Big Stik, is likewise personally liable for satisfaction of any such judgment or award.

84. Allowing Reed to hide behind the corporate form of Big Stik and At Pluto under these circumstances would produce a manifestly inequitable result: Reed would retain $564,680 of Pitchfork's funds personally while presenting an empty shell — Big Stik — to satisfy any judgment. This is precisely the scenario Illinois veil-piercing doctrine is designed to prevent.

## COUNT EIGHT – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### (Against Defendants Reed and At Pluto)

85. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

86. Pitchfork is entitled to preliminary and permanent injunctive relief on three independent grounds: (i) the IUFTA expressly authorizes injunctive relief against further disposition of fraudulently transferred assets, 740 ILCS 160/8(a)(3)(ii); (ii) the funds at At Pluto are specific identifiable property that are the direct proceeds of Reed's fraud and the subject of Pitchfork's conversion claim, over which this Court has inherent equitable power to preserve pending judgment; and (iii) Reed's breach of fiduciary duty as custodian of the Event Account gives rise to a constructive trust over the transferred funds, in which Pitchfork holds an equitable property interest.

87. Absent injunctive relief, Pitchfork will suffer immediate and irreparable harm. Reed admitted at his April 28, 2026, deposition that Big Stik has no funds remaining. The only

assets available to satisfy Pitchfork's claims are the funds presently at At Pluto. Reed has already demonstrated his willingness to transfer funds between entities without notice or authorization, and nothing prevents him from doing the same to At Pluto. Further dissipation will render Pitchfork's claims uncollectable. Pitchfork is likely to succeed on the merits for the reasons set forth above. The balance of equities favors Pitchfork because Defendants have no legitimate interest in retaining funds to which they have no legal or equitable claim.

88.     The threat of dissipation is not speculative. On June 15, 2026, Pitchfork requested that Reed, At Pluto, and Big Stik voluntarily agree not to transfer or dissipate the disputed funds pending resolution of these proceedings. On June 16, 2026, counsel for Defendants declined, providing no assurance that the funds would be preserved. Reed's refusal to provide even a voluntary standstill confirms that absent court-ordered relief, the At Pluto funds face immediate risk of further dissipation.

89.     Pitchfork requests that this Court issue a preliminary injunction restraining Defendants, and all persons acting in concert with them, from transferring, dissipating, encumbering, or otherwise disposing of any funds held in any account controlled by At Pluto Ltd. or Reed up to the sum of $564,680.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pitchfork respectfully requests that the Court enter judgment in its favor and against Defendants Reed and At Pluto as follows:

a.  Compensatory damages in an amount to be proven at trial, estimated to be in excess of $564,680;

b.  Punitive damages in an amount to be determined at trial, based on Defendants' intentional fraudulent conduct;

c.  Equitable relief, including disgorgement of all ill-gotten gains and any amounts drawn from the Event Account without authorization, including any amounts paid toward Big Stik's litigation defense costs;

d.  A preliminary injunction after hearing, made permanent upon final judgment, restraining and enjoining Defendants Reed and At Pluto Ltd., and all persons acting in concert with them, from transferring, dissipating, encumbering, pledging, spending, or otherwise disposing of any funds held in any account controlled by At Pluto Ltd. up to the sum of $564,680, pending satisfaction of any judgment or award entered in favor of Pitchfork in this action or in AAA Arbitration Case No. 01-25-0003-3257;

e.  Avoidance of the fraudulent transfer of funds from Big Stik to At Pluto under 740 ILCS 160/8, together with a money judgment against Defendants for the value of the transferred funds under 740 ILCS 160/9;

f.  Injunctive relief, including an order instructing Defendants to return all funds traceable to the Event Account to Pitchfork and to preserve and produce all records relating to the Event Account and to all transfers of funds therefrom;

g.  A decree compelling a full accounting of the Event Account from July 2024 to the present, and of all funds transferred from the Event Account to At Pluto or any other person or entity, including complete accounting schedules of all income, expenses, disbursements, and accrued interest, with supporting documentation for every transaction;

h.  A judgment declaring that Reed is the alter ego of Big Stik and At Pluto and personally liable, jointly and severally, for all obligations of those entities arising from the conduct described herein, including any judgment or award entered against Big Stik in any related proceeding;

23

i.   Attorneys' fees and costs, including all fees and costs incurred in bringing and prosecuting this action;

j.   Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

k.   Such other and further relief as the Court deems just and proper.

## VII.   JURY DEMAND

Plaintiff hereby demands a jury to the extent permitted by law.

Respectfully Submitted,

DATED:      July 6, 2026.

/s/ *Joshua H. Harris*
Joshua H. Harris
Illinois State Bar No.: 6341681
**BREWER, ATTORNEYS & COUNSELORS**
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:  (214) 653-4802
jharris@brewerattorneys.com

William A. Brewer IV (*Pro Hac Vice*
forthcoming) New York State Bar No.: 5340161
**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849
wbb@brewerattorneys.com
**ATTORNEYS FOR PLAINTIFF**